**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THERASENSE, INC.,

          Plaintiff,

   v.

BECTON, DICKINSON AND COMPANY,

          Defendant.

_____ /

No. C04-02123 MJJ
No. C04-03327 MJJ
No. C04-03732 MJJ

**ORDER DENYING DEFENDANTS'
MOTION FOR LEAVE TO AMEND
ANSWER AND COUNTERCLAIMS**

**INTRODUCTION**

Before the Court is Defendants Nova Biomedical Corporation's and Becton, Dickinson and Company's (collectively "Defendants") Motion For Leave To Amend Answer And Counterclaims. (Docket No. 369.)  Defendants seek leave to plead a new inequitable conduct theory, alleging that the inventors of the '890 patent failed to disclose the MediSense Companion 2 Blood Glucose Test Strip as prior art to the PTO during prosecution of the '890 patent.

For the following reasons, the Court **VACATES** the November 20, 2007 hearing in this matter and **DENIES** Defendants' Motion.

**FACTUAL BACKGROUND**

The operative scheduling order in this case set July 2, 2007 as the deadline to amend pleadings.  In response to a request by Defendants to amend their answer and counterclaims that was submitted on July 2, this Court at a September 18, 2007 hearing granted leave under Rule 15 for Defendants to file amended answers and counterclaims.  In a September 7 brief relating to that

United States District Court

For the Northern District of California

1   request, Defendants stated: "BD and Nova alert the Court to their intent to seek leave to further

2   amend their Answers based on discovery obtained over approximately the last two weeks.  BD and

3   Nova expect to seek Abbott's consent shortly and will seek leave of the Court shortly thereafter."

4        More than a month later, on October 15, 2007, Defendants filed the instant motion seeking

5   leave to amend.  In the interim, fact discovery had ended on September 12, and expert witness

6   disclosures had been exchanged on September 12 as well.  Several significant case management

7   deadlines have also passed between October 15, 2007 and the November 20, 2007 hearing that

8   Deendants noticed for the instant motion, including the October 26 deadline for expert discovery

9   relating to technical matters, the October 26 deadline for the filing of dispositive motions, and the

10  October 31 deadline for rebuttal expert reports on non-technical matters.  Dispositive motions are

11  scheduled to be heard on December 12, 2007, and trial is set for February 25, 2008.

**LEGAL STANDARD**

13       Pursuant to Fed. R. Civ. P. 16(b), a party can amend its pleadings after the deadline specified

14  in a scheduling order "upon leave of the court and a showing of 'good cause.'"  A court's evaluation

15  of good cause is not coextensive with an inquiry into the propriety of the amendment under Rule 15:

> Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension.  Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.  Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

23  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (quotations and citations

24  omitted); *see also Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007).

**ANALYSIS**

26       Defendants contend that they first came into possession of evidence demonstrating the

27  viability of their new inequitable conduct allegations in depositions that took place on August 28,

28  2007 and September 7, 2007.  Abbott disagrees, contending that Defendants were already in

2

United States District Court

For the Northern District of California

1  possession of information indicating the basis for their inequitable conduct allegations as early as

2  May 2006, when Abbott produced the 510(k) Notification for the Precision QID blood glucose strip.

3       After reviewing the parties' submissions, the Court finds that Defendants have not

4  adequately demonstrated diligence in investigating this inequitable conduct ground.  While the

5  510(k) may not have provided Defendants with proof of all of the elements required to plead an

6  inequitable conduct claim, the 510(k) did at a minimum put Defendants on notice of the general

7  relevance of the Companion 2 strip as possible prior art.  The 510(k) expressly describes the

8  Companion 2 device as "substantially equivalent in form, function and intended use" to the

9  Precision QID test strip.  (Hutcheson Decl., Exh. B.)  Moreover, given that the prosecution history of

10  the '890 patent would show that the Companion 2 device was not disclosed to the PTO, Defendants

11  also were fairly on notice that the Companion 2 device was a possible candidate for an inequitable

12  conduct defense.[1]  Even before deposing the '890 inventors, Defendants also had a basis to

13  reasonably suspect that at least those '890 inventors associated with MediSense knew of the

14  Companion 2 device, since it was a predecessor MediSense product.  Accordingly, the Court finds

15  that the record here strongly suggests that Defendants "knew or should have known the facts and

16  theories raised by the amendment." *Amerisource Corp. v Dialysist W. Inc.*, 465 F. 3d 946, 953 (9th

17  Cir. 2006).

18       Against this backdrop, Defendants do not offer an adequate explanation for why they did not

19  more diligently seek depositions of the inventors of the '890 patent prior to the deadline for seeking

20  amendments. Indeed, Defendants provide no real information regarding the diligence with which

21  they investigated potential inequitable conduct theories, nor regarding the diligence with which they

22  reviewed Abbott's document production, including the 510(k).  Yet the burden to demonstrate "good

23  cause" – and therefore to demonstrate diligence – falls squarely on Defendants in the Rule 16

24  context.

25       Defendants cite to Abbott's August 2007 amended response to Interrogatory No. 10 as the

26

27      [1] The expert report of Anthony P.F. Turner, one of Defendants' experts, relies heavily on the 510(k) as a basis for
contending that Companion 2 strip should have been disclosed to the PTO. (Hutcheson Decl., Exh. B.)   This is a further
28  indication that the contents of the 510(k) were enough to suggest to a reasonably diligent defendant that the Companion 2
device was worth investigating as a candidate for an inequitable conduct defense.

United States District Court

For the Northern District of California

1  apparent 'trigger' that caused them to request the inventors' depositions and ultimately confirm facts

2  that allegedly prove the inequitable conduct contentions.  But Defendants fail to adequately explain

3  what was newly revealed in the interrogatory response about the relevance of the Companion 2 strip

4  to an inequitable conduct analysis that Defendants could not have earlier discerned in the exercise of

5  diligence.  The interrogatory response, which deals with the reduction-to-practice of the '890

6  invention, does not appear to contain information directly relevant to whether inequitable conduct

7  occurred.  Defendants assert that the interrogatory response newly detailed Abbott's "prior

8  invention" position, but Defendants do not link this position to the elements of an inequitable

9  conduct claim, nor explain how the response provided a missing link that Defendants could not have

10  suspected or investigated earlier.  While the interrogatory response may explain Defendants'

11  renewed focus on Companion 2 in discovery – from which Defendants secured evidence that they

12  believe supports an inequitable conduct allegation  – this fortuitous chain of events does not suffice

13  to establish that Defendants had acted diligently up until that point in investigating inequitable

14  conduct theories suggested by the evidence they already had.

15  　　　　Nor can the Court make a finding of diligence from the mere fact that it was not until late

16  August and early September of this year that Defendants actually obtained deposition testimony

17  from Dr. Scott and Dr. Watkin regarding the Companion 2 device.  Many of the facts that

18  Defendants claim were first "revealed" in these depositions are facts that were suggested by the

19  510(k) or by other evidence already in Defendants' possession.[2]  While Defendants may have first

20  become convinced of the strength of their inequitable conduct allegation after taking these

21  depositions, Defendants have not demonstrated that they investigated these allegations with enough

22  diligence in the preceding months to warrant relief from the scheduling order entered in this case.

23  　　　　Though an insufficient showing of diligence – such as Defendants' showing here – is enough

24  to end the inquiry under Rule 16, the Court also finds that the disruptive effect that further

25

26  　　　　[2] Based on the record before the Court, Defendants appear to have overstated the degree to which information
probative of inequitable conduct issues was newly revealed or confirmed by the two inventor depositions. For example, the
27  deposition transcript pages submitted by Defendants do not provide much support for their representation that the depositions
newly revealed that Precision QID and Companion 2 were "substantially equivalent in form, function, and intended use",
28  or that the Companion 2 device contains nearly all the elements of claims 1 and 7 of the '890 patent.

**United States District Court**
For the Northern District of California

1  amendment would have on the pretrial schedule counsels against granting the motion.  Even after

2  Defendants were admittedly aware of their new inequitable conduct theory, Defendants waited until

3  after the close of fact discovery and after the exchange of initial expert reports to file the instant

4  motion.  Additional case management deadlines, including the deadlines for expert discovery on

5  technical issues and for dispositive motions, have also passed prior to the noticed hearing date on

6  Defendants' motion.  The Court finds that the disruption and additional work and expense that

7  would be caused by reopening some or all of these deadlines, even on a limited basis, provides an

8  additional reason not to permit the amendment.

9  <center>**CONCLUSION**</center>

10      For the foregoing reasons, the Court **VACATES** the November 20, 2007 hearing in this

11  matter and **DENIES** the motion.

12

13

14  **IT IS SO ORDERED.**

15

16

17  Dated: November 15, 2007

MARTIN J. JENKINS
18                                                          UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28