IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERASENSE, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BECTON, DICKINSON AND COMPANY,<br><br>　　　　　Defendant.<br>_____/ | No. C04-02123 MJJ<br>No. C04-03327 MJJ<br>No. C04-03732 MJJ<br>No. C05-03117 MJJ<br><br>**ORDER GRANTING BD/NOVA'S MOTION FOR LEAVE TO AMEND FINAL INVALIDITY CONTENTIONS** |

　　　　Before the Court is BD/Nova's Motion For Leave to Amend Final Invalidity Contentions To Add A Single Defense Of Prior Public Use Against U.S. Patent No. 5,628, 890. In its Motion, BD/Nova seeks to amend its Final Invalidity Contentions to add a Section 102(b) public use bar defense that would, if meritorious, invalidate the '890 patent. The proposed defense is based upon an alleged clinical trial that Abbott conducted in the United States in the fall of 1994.

　　　　BD/Nova has made a convincing showing that it diligently pursued discovery relating to the clinical trials, but that evidence that the *timing* of clinical trial was before the critical date of September 27, 1994 – which is essential to a Section 102(b) public use defense – was delayed by Abbott until towards the very end of discovery, after BD/Nova had served its Final Invalidity Contentions. BD/Nova served its Final Invalidity Contentions in June 2007, the same month that Abbott's 30(b)(6) witness maintained that the clinical trials took place in November 1994, a date that would not support a public use defense. When deposed on June 21, 2007, Abbott's witness, Mr.

1  Scott, testified that the clinical trials occurred in November 2004. (Scott Depo. at 264:264:15-17,
2  Mehta Decl., Exh. 1.) It was reasonable for BD/Nova to rely on this testimony at the time, because
3  Abbott had not produced any documents that contradicted this testimony. Only documents produced
4  by Abbott in the second half of October 2007, including actual questionnaires filled out during the
5  clinical trial, first indicated that the clinical trials had actually occurred on September 22 and 23,
6  before the September 27, 1994 critical date. BD/Nova subsequently confirmed the timing suggested
7  by these records when Abbott finally produced a deposition witness in November 2007 who had
8  firsthand knowledge of the timing of the clinical trials.

9  None of Abbott's arguments as to BD/Nova's lack of diligence are persuasive. First, Abbott
10 contends that BD/Nova has been aware for more than 1 ½ years of the facts on which the prior
11 public use invalidity defense is based. Specifically, Abbott contends that in May 2006, Abbott
12 produced the 510(k) Notification for the Precision QID blood glucose strip. (Hutcheson Decl., Exh.
13 D.) Abbott contends that the 510(k) put BD/Nova on notice of the timing of the confidential clinical
14 trials. Abbott's contention is inaccurate. While the 510(k) contains several references to the
15 confidential clinical trials and the protocols for the September 1994 trials (id. at TH0140991-
16 140998), it does not indicate when the trial took place. The 510(k) contains signatures from the trial
17 investigator, approving changes to the clinical trial protocol, that have dates as late as September 21,
18 1994. Thus, the 510(k), at most, suggests that the clinical trials had not begun as of six days before
19 the critical date..

20 Second, Abbott also contends that Defendants specifically questioned both Jared Watkin and
21 Steve Scott about the 510(k) and the clinical trials during their August and September 2007
22 depositions. While true, the testimony of these witnesses did not disclose that any portion of the
23 clinical trials had occurred prior to September 27, 2007; to the contrary, they indicated they could
24 not determine the date of the clinical trials from the 510(k). (Scott Depo. at 65:24-66:2, Supp.
25 Mehta Decl., Exh. 20; Watkin Depo. at 188:22-189:7, Supp. Mehta Decl., Exh. 21.) Mr. Watkin
26 further testified that the clinical trials "could have been tested much later" than the September 1994
27 signature dates found in the 510(k). (Watkin Depo. at 189:6-7, Supp. Mehta Decl., Exh. 21.)
28 Moreover, when Mr. Watkin was asked how to best find out when the actual clinical trials occurred,

2

he directed BD/Nova to the "filled-in sheets of which these are examples" in the 510(k). (Watkin Depo. at 190:9-12, Supp. Mehta Decl., Exh. 21.) These are the documents that Abbott did not produce until the second half of October 2007. (Mehta Decl., Exh. 11.)

Third, Abbott contends that two documents provided in discovery by Abbott on December 2005 put BD/Nova on notice of the public use defense. (Hutcheson Decl., Exhs A & C.) Abbott is incorrect, particularly in light of the testimony that Abbott's witnesses provided about these two documents. The first, an August 31, 1994 facsimile from Mr. Watkin to Michael Halpin, stated that electrodes would be sent over for the 510(k) trials. (Hutcheson Decl, Exh. A.) However, that facsimile did not indicate the date that the clinical trials actually took place. In his deposition testimony, when asked about the facsimile, Mr. Watkin indicated: "I suspect there was a plan date in mind, but I wouldn't be able to recall what it was." (Watkin Depo. at 111:4-5, Supp. Mehta Decl., Exh. 21.) The second document, a September 12, 1994 memorandum from Ms. Martin to Messrs. Watkin and Sanghera (Hutcheson Decl., Exh. A) appears to suggest that the clinical trials would start "on Thursday morning" (Hutcheson Decl., Exh. A), and therefore at least suggests the clinical trials may have started before the September 27, 1994 trial date. However, when Mr. Watkin was asked about this document at deposition, he indicated that the document reflected current plans, but he could not determine when the clinical trial started from the document. (Supp. Mehta Decl., Exh. 21. at 119:2-120:16.)

Allowing BD/Nova to try the public use defense on the merits is also consistent with principles of fairness given that Abbott, in a supplemental interrogatory served in August 2007,[1] made clear that it plans to rely on these very same clinical trials to establish a "prior invention" date for the '890 patent in an effort to defeat the Ikeda prior art reference, which BD/Nova alleges is anticipatory. BD/Nova's public use defense is thus related to a key factual issue already placed at issue by Abbott in the case. Abbott apparently waited until the very end of discovery to disclose this "prior invention" theory, and Abbott's theory depends on both the timing of the clinical trials and upon proof that the device used in the clinical trials falls within the scope of the '890 patent claims.

---

[1] In that interrogatory response, Abbott vaguely stated that the clinical trials took place in the "Fall of 1994" (Mehta Decl., Exh. 17 at p. 8.)

3

1 Under these circumstances, the Court would risk a miscarriage of justice if it permitted Abbott to
2 rely on the clinical trials in an attempt to pre-date the Ikeda prior art patent, while simultaneously
3 shielding Abbott from exposure to a potentially-meritorious public use defense based upon the same
4 clinical trials.

5      For the following reasons, the Court finds that BD/Nova has established "good cause" under
6 Patent Local Rule 3-7 to amend its Final Invalidity Contentions, and therefore **GRANTS** the
7 Motion.

9 **IT IS SO ORDERED.**

12 Dated: April 3, 2008

                          MARTIN J. JENKINS
                          UNITED STATES DISTRICT JUDGE