United States District Court

For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   THERASENSE, INC.,                          No. C 04-02123 WHA

11          Plaintiff,                          Consolidated with

12     v.                                       No. C 04-03327 WHA
                                                No. C 04-03732 WHA
13   BECTON, DICKINSON AND COMPANY,             No. C 05-03117 WHA

14          Defendant.
                                        /       **OMNIBUS ORDER ON MOTIONS**
15                                              **FOR FINAL PRETRIAL**
     AND CONSOLIDATED CASES.                    **CONFERENCE SUBMITTED**
16                                      /       **WITHOUT ORAL ARGUMENT**

17

18                               **INTRODUCTION**

19          This group of now-consolidated patent infringement actions was re-assigned to the

20   undersigned earlier this year.  Since the cases had been set for trial three times (and then

21   continued), the Court has now given them priority on the trial calender and set them for trial

22   starting May 27, 2008.  All sides filed numerous motions in preparation for the final pretrial

23   conference.  All of the motions have been carefully considered and oral argument is

24   unnecessary as to the following.  This omnibus order resolves all pending motions except those

25   for which oral argument will be allowed.

26

27          **BAYER MOTION FOR SUMMARY JUDGMENT (INVALIDITY '551 PATENT)**

28       **DENIED**.  This motion is not as simple and straightforward as counsel promised.  On this

     voluminous summary-judgment record, the Court is not yet convinced of the impact of the now-

1   controverted sentence in the '382 patent on the '551 claims asserted herein.   Among other

2   things, plaintiffs draw a distinction between a membrane being used for whole blood versus

3   other fluids and how that distinction informs the meaning of the '382 patent.  On this record, the

4   Court is not yet convinced that the distinction is meritless.  Moreover, *if* the statement made to

5   the '551 patent examiner turns out to have been true, could invalidity (as opposed to inequitable

6   conduct) be found merely because a contradictory (and erroneous) statement made in a different

7   proceeding was not also revealed to the '551 examiner?

8       Bayer has not carried its burden to eliminate all possible issues.  This ruling does *not*

9   mean that Abbott's supposed distinction is valid.  This ruling is without prejudice to a Rule 50

10   motion at the close of the evidence, when the matter may be clearer.

11

12                    **ROCHE MOTION FOR SUMMARY JUDGEMENT ('745 INVALID)**

13       **DENIED**.  As an initial matter, Roche has already made and lost a motion for summary

14   judgment of non-infringement of the '745 patent.  The present motion is nothing more than an

15   attempt to get a second bite at the apple and should therefore be denied on that ground alone.  In

16   addition, the Court finds the motion confusing except for pages 9–11.  As to the issue on those

17   pages, Roche has not met its summary-judgment burden to show by clear and convincing

18   evidence that amperometry is a small genus.  Roche primarily relies on the '745 specification

19   which discloses that amperometrey includes chronoamperometry and Cottrell-type

20   measurements.  But nowhere in the '745 specification or the prior art references relied on by

21   Roche for its anticipation and obvious arguments does it state that the amperometrey genus is

22   small or limited.  The trial record may be better and clearer so that a verdict of invalidity could

23   be sustained.

24

25   **PLAINTIFFS' MOTIONS FOR RECONSIDERATION OF JUDGE JENKINS' SUMMARY JUDGMENT**
                                         **ORDER**
26

27       **DENIED IN PART**.  Plaintiffs' opening memorandum made no effort whatsoever to justify

28   the motions under Local Rule 7-9(b).  In their replies, plaintiffs maintained that such a showing

     was not required because the Court had already given them leave to file two motions for

United States District Court

For the Northern District of California

reconsideration. This is not an accurate statement. During a long hearing on many issues, plaintiffs' counsel stated that she wished to file two motions for reconsideration of Judge Jenkins' summary judgment order. This came out of the blue. The Court tried to dissuade any such effort but relented and said plaintiffs could try. The Court assumed that counsel would justify the motions under our local rule restricting motions for reconsideration. There is no way the undersigned was in a position to know whether those requirements were satisfied. At no time did counsel as the Court to waive the requirements. It is unfair for counsel to blame the judge for their own failure to justify the motions under our local rule.

### BAYER MOTION *IN LIMINE* NO. 2 (WILLFULNESS)

**DENIED**. Material fact issues must be resolved by jury. *Seagate* eliminated an affirmative obligation to obtain an opinion of counsel. This change in the law occurred in 2007. Plaintiffs should be permitted to prove willfulness through ordinary evidence using the new standard of objective recklessness, assuming the evidence has been disclosed properly or late disclosure is excused. Bayer raises plausible arguments why the other evidence cited by plaintiffs is inadmissible. Nonetheless, the Court believes it best to rule on the hearsay and foundation problems at trial in the traditional manner. Bayer also raises issues of expert disclosure. Experts will be limited on direct examination to the four corners of their reports. Even then, some expert material may be excluded as inadmissible. If a party failed to ask Judge Jenkins for leave to file a supplemental expert report after *Seagate*, August 20, 2007, that is its own fault. It is too late to do so now. Expert opinion, moreover, is not necessarily needed to prove willfulness.

### ROCHE MOTION *IN LIMINE* NO. 1 (LOST PROFITS)

**DENIED AS TO THE '745 PATENT.** Roche's request to strike Abbott's entire lost-profits claim for the '745 patent is unreasonable. Federal Circuit law makes clear that a patentee must be permitted to recover any damages it suffered as a result of infringement. Abbott Diabetes Care, Inc. ("ADC") is the owner of the '745 patent. Even assuming that ADC cannot recover

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1    damages for lost profits of Abbott Diabetes Care Sales Corporation ("ADCSC"), Abbott would

2    still be entitled to show any lost profits suffered by ADC directly. Eliminating ADC's entire

3    lost-profits claim because plaintiffs' damage expert included ADCSC's lost profits in his

4    analysis is a drastic move when ADC's lost profits are easily ascertainable from the damage

5    experts' calculations. At trial, the damage expert will be asked to break up his analysis to

6    separate ADC's lost profits from ADCSC's. Roche maintains that Abbott's damage expert. Dr.

7    Ugone, admitted that he was not sure whether he could break up his analysis with the

8    information he was provided. Dr. Ugone will be permitted to give a supplemental report

9    including any adjustments needed to separate ADC's lost profits from ADCSC's. These

10   adjustments must be limited to this one change. Defendants may then depose Dr. Ugone up to

11   two hours by May 21, 2008. The Court will then decide whether ADCSC's lost profits should

12   be considered. This ruling only applies to the '745 patent.

13

14                    **ROCHE MOTION *IN LIMINE* NO. 3 (JOHNSON)**

15          **DENIED**. The deposition quote is subject to interpretation and should be laid before the

16   jury. This is without prejudice to a Rule 50 motion if Johnson performs poorly on

17   cross-examination and other evidence fails to fill the gap.

18

19              **PLAINTIFFS' UNNUMBERED MOTION *IN LIMINE***
20   **TO EXCLUDE IMPROPER LEGAL TESTIMONY FROM PATENT LAW EXPERTS**

21          **DENIED**. Of course, it is the Court's job to determine the governing law. Since,

     however, both side's views of the inequitable conduct issue rests on a mix of fact and duty, it
22
     would be useful to hear the precise statement of the alleged duty so that the Court may discount
23
     the experts' opinions if excessive views of the legal duty have been assumed. This issue is for
24
     the judge, so no harm will be done in hearing out the legal regulatory framework supposedly
25
     behind the experts' testimony. To the extent the jury also hears the testimony, curative
26
     instructions will eventually correct any misstatement of the law by the experts.
27
            In a separate argument, Abbott contends the law experts should not be permitted to say
28
     what was and was not material since they are not persons of ordinary skill in the art, that is, that

                                             4

United States District Court

For the Northern District of California

1   they should stick to PTO practice points and not veer off into science.  While this argument has

2   considerable appeal and would be true in many contexts, it is not always true.  Some issues of

3   materiality may be so independent of scientific complexity that even patent lawyers can

4   understand them.  If, for example, a inventor swears in a later application that a given formula

5   was always true, he would normally be obligated to reveal that he had sworn in an earlier

6   separate application that the same formula was never true.  When the contradiction is manifest,

7   scientists are not needed to explain it.  On the other hand, if scientists are needed to explain or

8   set up the contradiction, then mere lawyers should refrain from purporting to explain the science

9   part.

10         The present case is as follows.  Abbott contends that in 1983 persons of ordinary skill in

11  the art believed that a membrane around the active electrode was essential to perform accurate

12  measurements *using whole blood*.  The '551 patent, it seems, revealed a way to conduct tests in

13  whole blood without a membrane.  An earlier patent also controlled by Abbott — the '382

14  patent — supposedly (says Abbott) disclosed tests without a membrane but *only* in cases other

15  than whole blood.  The only '382 tests with whole blood used a membrane.  Supposedly, the

16  only sensors described in the '382 patent in which membranes were optional were for fluids

17  other than whole blood and for whole blood where a filtering member was used in place of a

18  membrane.  The non-controverted sentence in the '382 patent specification stated:

19              Optionally, but preferably when being used on live blood, a
            protective membrane surrounds both the enzyme and the
20            mediator layers, permeable to water and glucose molecules.

21  Abbott contends that this did not mean that a membrane was optional to surround the active

22  electrode when used with whole blood.  Nonetheless, in the '551 prosecution, this sentence

23  troubled the examiner and the applicant had a hard time getting around it.  According to a 1997

24  interview summary, Abbott eventually convinced the examiner that the '382 patent *required* a

25  membrane with whole blood and that the sentence in question was not to the contrary.  To

26  convince him, Abbott's Sanghera gave a sworn statement to the PTO stating that at the time of

27  the '382 patent

28              one skilled in the art would have felt that an active electrode
            comprising an enzyme and a mediator would require a

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

> protective membrane if it were to be used with a whole
> blood sample.

The patent in suit then issued.

Trouble was, as to the very same sentence, Sanghera evidently knew all along that his company had earlier stated as follows to the European Patent Office:

> It is submitted that this disclosure is unequivocally clear.
> The protective membrane is optional, however, it is
> preferred when used on live blood in order to prevent the
> larger constituents of the blood, in particular erythrocytes
> [red blood cells] from interfering with the electrode sensor.

This statement had been made by Abbott's predecessor to save the European counterpart to the '382 patent from an invalidity challenge, a circumstance in which the patent applicant had an incentive to put the opposite meaning on the sentence. Defendants now say the last two constructions of the sentence in question flatly contradict each other. One of the central issues is whether Sanghera violated a duty of candor by submitting one such statement without disclosing the other, all bearing on the meaning of the very sentence that had troubled the examiner.

This issue turns on a single sentence and two interpretations of it. For the most part, the sentence and the two interpretations can be understood without resort to science, for a crucial issue is whether the two interpretations were at war with one another. Therefore, lawyers skilled in practice before the PTO and familiar with how the duty of candor works in practice should be allowed to opine on whether both should have been revealed to the PTO. The lawyer witnesses, however, should stop short of trying to explain the underlying science.

It bears repeating that no expert of any kind will be allowed to speculate as to anyone's subjective intent or knowledge. The experts can point to evidence bearing on these issues, such as a deposition admission or smoking-gun memo to file, but they cannot submit speculation or argument on subjective intent and knowledge. It will be helpful and allowed for the experts to explain why they think the earlier "contradictory" statement needed to be disclosed to the PTO (or not) and to explain PTO practice and procedure.

6

**United States District Court**
For the Northern District of California

**PLAINTIFFS' UNNUMBERED MOTION *IN LIMINE*
TO EXCLUDE UNRELIABLE TESTIMONY FROM DEFENSE PATENT LAW EXPERTS**

**DENIED**.  As to Smegal, the Court would like to hear the pros and cons from both side's experts on whether the PTO duty of candor required Abbott, Sanghera, or Pope to disclose the "contradictory" statement made earlier to the EPO about the meaning of the sentence in question, given that Sanghera with Pope's blessing made allegedly contradictory statements to the PTO.  The immediately preceding sentence is subject to the more paramount rule that all experts will be limited on direct examination to the four corners of their report.  If an expert failed to include a theory in his or her report, then, the expert may not testify on direct examination to the new theory.  If opposing counsel, however, "opens the door" on cross examination, however, then the expert may address issues beyond those in the report.

Contrary to plaintiff the Smegal report (¶¶ 101–102) does argue that Pope and Sanghera had a duty under Rule 56 to disclose the prior inconsistent statement (assuming it was inconsistent).  Plaintiff argues that Bayer is resorting to a new theory but the undersigned does not detect a new theory.  Again, as the experts testify, the undersigned will follow along with the expert report and will sustain any objection that the expert is adding a new point not in the report, at least on direct examination.

The Court will sort out what the duty of candor does and does not require and what the word "cumulative" means or does not mean after it hears out both side's experts.  To the extent the jury hears it as well, the Court will override any incorrect statements of the law by the experts with curative instructions.

As to Kunin, it is for the Court, not the expert, to apply the proper standard of proof.  As to whether the '465 publication is cumulative of other prior art, the Abbott submission is too sketchy to grasp the issue.  As to the '745 patent, no expert will be allowed to testify as to knowledge and/or intent.  Expert Kunin, therefore, cannot be faulted for not alleging that Liepa or Black *knew* of the '465 publication or its materiality.  Knowledge and intent must be decided by the judge based on all the facts and circumstances.  Kunin can testify as to why he thinks the duty of candor required disclosure of the '745 and why.  The Court will like to hear the analysis

7

as well as the counter-analysis.  The submission has not carried its burden to show that the line

of testimony is inadmissible.

        **IT IS SO ORDERED.**

Dated:  May 12, 2008.

                        WILLIAM ALSUP
                        UNITED STATES DISTRICT JUDGE